## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 17 2016, 9:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Mark Small
Indianapolis, Indiana

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Termination Parent-Child Relationship of:

M.O. and B.E.
        and

B.O. (Mother) and B.E. (Father),

*Appellants-Respondents,*

        v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

**Bailey, Judge.**

March 17, 2016

Court of Appeals Case No.
01A04-1509-JT-1330

Appeal from the Adams Circuit Court

The Honorable Chad E. Kukelhan, Judge

Trial Court Cause No.
01C01-1501-JT-1
01C01-1501-JT-2

# Case Summary

B.O. ("Mother") and B.E. ("Father") appeal the termination of their parental rights to M.O. and B.E. ("Children"), upon the petition of the Adams County Department of Child Services ("the DCS"). We affirm.

# Issue

Mother and Father, who have submitted separate appellate briefs, present a single consolidated issue for review: Whether the DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision.

# Facts and Procedural History

On August 9, 2013, a fourteen-month-old child, later identified as B.O., was dropped off at the medical offices of Dr. Judge in Berne, Indiana. B.O. was experiencing seizures and was transported to Adams Memorial Hospital. As authorities attempted to identify and contact B.O.'s parents or guardian, Mother and Father appeared at Adams Memorial Hospital.

Family case manager Michelle Norman interviewed the parents. Father appeared to be under the influence of a stimulant while Mother had a flat affect and spoke little. When it was determined that Father was on probation following a conviction for dealing in cocaine, officers were dispatched to the

parental residence. Inside the residence, officers found an object with methamphetamine residue together with drug paraphernalia.

[5] Mother and Father submitted to drug screens. Father tested positive for methamphetamine and amphetamine. Mother, who was then eight months pregnant, tested positive for methamphetamine, methadone, and marijuana.[1] Both were placed under arrest. Mother was released, while Father remained incarcerated for a probation violation. Approximately five weeks later, Mother gave birth to M.O. The infant was found to have THC in her bloodstream, and was taken into DCS custody.

[6] On November 26, 2013, Children were found to be Children in Need of Services ("CHINS") and the parents were ordered to participate in services. Among other things, they were ordered to maintain suitable housing and income, contact the DCS weekly, refrain from drug use, undergo substance abuse assessment, attend pediatric appointments, and participate in home-based counseling. However, Father remained incarcerated. Mother participated in some services, but relapsed into drug use in June of 2014 and was again incarcerated.

[7] On January 7, 2015, the DCS petitioned to terminate the parental rights of Mother and Father as to Children. An evidentiary hearing was conducted on

---

[1] Mother had ingested what could, for an "average person," be a lethal dose of methamphetamine. (Tr. at 127.)

June 22, 2015 and on June 26, 2015. By that time, Father had been convicted of Possession of Methamphetamine and Possession of Paraphernalia, and had been sentenced to six years of incarceration. He was also ordered to serve four years of a previously-suspended sentence for Dealing in Cocaine. His projected release date was October 28, 2018. Mother had been convicted of like offenses and sentenced to ten years, with six years suspended to probation. Her projected release date was December 31, 2016. Children were in a pre-adoptive placement with paternal relatives.

[8] On August 5, 2015, the trial court entered its findings of fact, conclusions, and order. This appeal ensued.

# Discussion and Decision

## Standard of Review – Sufficiency of the Evidence

[9] In considering whether the termination of parental rights is appropriate, we give due regard to the trial court's opportunity to judge the credibility of the witnesses firsthand. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *Id.* When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

## Requirements for Involuntary Termination of Parental Rights

[10]   Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[11]   Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) that one (1) of the following is true:

(i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.
(ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
(iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

>(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
>(C) that termination is in the best interests of the child; and
>
>(D) that there is a satisfactory plan for the care and treatment of the child.

[12] If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

## Analysis

[13] Father initially makes a cursory allegation that termination "was a violation of [his] rights as protected by the United States Constitution" because the DCS did not provide him with services during his incarceration. (Father's Br. at 11.) However, he does not develop a due process or constitutional argument apart from his suggestion that the DCS could not have met its burden of proof on the probability of changed conditions when he had not affirmatively refused

avenues for change. We interpret Father's argument to be a challenge to the sufficiency of the evidence relating to Section 31-35-2-4(b)(2)(B) (reasonable probability conditions will not be remedied or relationship poses a threat to child's well-being). He does not challenge the trial court's determination pursuant to Sections 31-35-2-4(b)(2)(A) (removal from parent), (C) (best interests), or (D) (satisfactory plan).

[14] Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court needed only to find that one of the three requirements of subsection (b)(2)(B) had been established by clear and convincing evidence. *See* *L.S.*, 717 N.E.2d at 209. Here, Father argues that the DCS failed to establish, by clear and convincing evidence, that there is a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home will not be remedied. *See* I.C. § 31-35-2-4(b)(2)(B)(i).

[15] Father claims that he has been a model prisoner, drug-free and without conduct write-ups. He also focuses upon the impossibility of completing the ordered services during his incarceration. Strictly speaking, Father's claim that he did not "refuse to do anything requested of him by DCS" has evidentiary support. (Father's Br. at 14.) He remained incarcerated throughout the CHINS proceedings and was not able to comply with some provisions of the CHINS dispositional order. A DCS attempt to arrange visitation was not timely honored by the Department of Correction ("the DOC"), and Father has never

even met his youngest child. However, the trial court was not constrained to a simple evaluation of whether Father refused offered services.[2]

[16] The relevant statute does not simply focus on the initial basis for removal for purposes of determining whether a parent's rights should be terminated, "but also those bases resulting in the continued placement outside the home." *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*. Initially, the DCS removed Children because of parental drug use and lack of supervision. By the time of the termination hearing, both parents were incarcerated. At that time, and for a significant amount of time in the future, neither parent could provide Children with the necessities of life. Although both may have remained drug free during incarceration, the trial court was obligated to consider their historical conduct during periods of freedom, and the past failures to respond to the limited drug treatment in which they had participated. *See In re J.T.*, 742 N.E.2d at 512.

[17] Mother's challenge in regard to the sufficiency of the evidence also focuses on the probability of changed conditions. She, like Father, claims to have maintained her sobriety in prison. Additionally, she argues that some of the trial court's findings of fact are inaccurate, inadequate, or misleading. In

---

[2] The DCS has no obligation to plead and prove that services have been offered to a parent to assist in fulfilling parental responsibilities. *S.E.S. v. Grant Cnty Dep't of Welfare*, 594 N.E.2d 447, 448 (Ind. 1992).

particular, she challenges the findings as to her release date and her participation in DOC programs.

[18] Mother does not deny that she had a history of drug abuse, had not completed a DOC or DCS approved treatment program, or that her projected release date, as of the time of the termination hearing, was December 31, 2016. Rather, she points out that she had a possible release date as early as September of 2015,[3] that she was ineligible because of her release date for a particular DOC substance abuse treatment program,[4] and that she had privately obtained "several appointments" with Tim Hirschy before her incarceration. (Mother's Br. at 12.)

[19] However, although Mother suggests that participation in a DOC drug treatment and its GED program could not occur simultaneously, her caseworker Elaine Kuppler testified to the contrary.[5] Moreover, there is no documentation from which the trial court could conclude that Mother's "four or five" sessions with a

---

[3] Mother claims that she is now living in a work release facility in Indianapolis. However, this was not evidence of record at the time of the termination hearing. Mother testified to her expectation that she would be released to "house arrest" or to work release at some point. (Tr. at 12, 22.)

[4] Mother testified that a DOC substance abuse program required that she be "down to nine months" in her sentence for participation. (Tr. at 17.) She further testified that there were Alcoholics Anonymous and Narcotics Anonymous groups at the prison but she "didn't know" why she did not participate. (Tr. at 20.)

[5] Mother testified that she had been offered substance abuse classes at the DOC, but wanted to "get a GED right away," and "wasn't sure" that she could do both simultaneously. (Tr. at 26.) Kuppler testified that basic education and substance abuse classes could be taken simultaneously but "[Mother] opted not to do the substance abuse simultaneously with the education." (Tr. at 107.) This was corroborated by caseworker Laurie Hoffacker.

privately-arranged therapist constituted a drug treatment program. (Tr. at 12.)[6] She was unable to participate in the last DCS referral due to her relapse and re-incarceration. In short, Mother asks that this court reweigh the evidence and accord greater weight to the testimony of her efforts and future aspirations. This we cannot do. *In re A.A.C.*, 682 N.E.2d at 544.

The trial court concluded that the parents failed to remedy lengthy substance abuse addictions, were unable to presently parent due to incarceration, and had not benefitted from services offered in the past. The evidentiary record supports the trial court's factual findings and conclusions. The DCS presented sufficient evidence from which the trial court could conclude that there was a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home would not be remedied.

# Conclusion

The DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

Affirmed.

Vaidik, C.J., and Crone, J., concur.

---

[6] Mother also testified that her meetings with the therapist had taken place only "a couple of times." (Tr. at 27.)